STATE OF NEBRASKA, APPELLEE, V. TERRY L. WALKER, APPELLANT.
493 N.W.2d 329

Filed December 24, 1992.    No. S-91-620.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Appellant, Terry L. Walker, brings this action to reverse his district court conviction for first degree sexual assault on a child, in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1989). After being found guilty by a jury, Walker was sentenced to 4 to 6 years' incarceration. We affirm.

On June 28, 1990, the victim told her stepmother that she had submitted to sexual contact with Walker. The stepmother then called her husband, the victim's father, and they drove the victim to Saint Joseph Hospital, where test samples were taken to obtain evidence of sexual assault. The victim repeated her allegations to the interviewing nurse and later to the police.

The victim alleged that Walker had phoned her, picked her up in his car, and asked her to perform oral sex—which she did. She further stated that Walker then drove to a wooded area and parked the car. Walker allegedly began kissing and fondling the victim and began to undress her. While removing her clothing,

Walker allegedly tore her skirt and underwear. The victim stated that she then engaged in sexual intercourse with Walker. Afterward, Walker allegedly dropped her off near her father's house.

At the time of the incident, the victim was 15 years old and Walker was 32 years old. Section 28-319(1)(c) provides that "[a]ny person who subjects another person to sexual penetration and . . . the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree."

On August 9, 1990, Walker went to the Omaha central police station to take a polygraph test concerning the allegations. Walker was given his *Miranda* rights, signed a "Polygraph Rights Advisory Form," and took part in a "pretest interview" with a polygraph examiner, Officer Richard Circo. The interview was videotaped and later was shown to the jury at trial, over Walker's objection.

During the interview, Circo told Walker that he was free to leave at any time. Walker initially denied any sexual contact with the victim. While interviewing Walker, Circo stated that if the sex was mutually agreed upon, it did not constitute sexual assault. Circo made further comments that it is not uncommon for children to lead adults on about sex and for the sexual contact to be agreed upon. In a tape-recorded statement Circo said to Walker, "I've seen someone who's in pain and who is under stress, and you're in a lot of emotional stress." After further denials and more questioning, Walker admitted having intercourse with the victim. No polygraph test was given. Later that day Walker was interviewed by Officer Steve Henthorn and, after being informed of and waiving his rights, again admitted having intercourse with the victim. The Henthorn-Walker interview was not taped; Henthorn testified to its substance at trial.

At trial, Walker moved to suppress and later objected to the admission of all statements he had made to the officers, arguing that the statements were involuntarily given and coerced. The trial judge overruled both the motion and the objections. The victim, her father, and her stepmother, as well as the examining doctors, also testified at trial. The doctor who analyzed the test

samples stated that the samples indicated the presence of seminal fluid.

Circo testified over objection regarding Walker's admission during the pretest interview. During his testimony, in response to the prosecutor's question about his job, Circo stated that he worked for the police as a polygraph examiner. Walker then moved for mistrial based on "testimony regarding polygraph." The court overruled the motion, but did sustain Walker's continuing objection as to Circo's duties as a polygraph operator. The court later had the prosecution lay foundation that Circo was a polygraph examiner, that no polygraph was given to Walker, and that Walker was only subjected to a pretest interview.

Walker also objected to the introduction of the "Polygraph Rights Advisory Form" and the "Polygraph Interview" sheet, exhibits 2 and 3, respectively. The court overruled each objection and received the exhibits into evidence. After the jury found Walker guilty, he was sentenced to 4 to 6 years' incarceration.

On appeal, Walker alleges that the district court erred in (1) failing to suppress his statements to Circo because they were elicited by improper inducements; (2) admitting exhibits 2 and 3 and allowing Circo to refer to the polygraph examination, because the evidence violated the "polygraph relevancy rule" and was more prejudicial than probative; and (3) denying Walker's motion for mistrial.

Walker first argues that Circo, by his comments during the pretest interview, improperly induced Walker's confession —thereby rendering the confession involuntary and inadmissible. Walker objects to three categories of statements made by Circo: (1) that Walker was "in a lot of emotional stress"; (2) that if the contact between Walker and the victim was mutually agreed upon, it did not constitute sexual assault; and (3) that sexual contact between children and adults is not uncommon and that the children often initiate the contact. The district court denied Walker's suppression motion and objections.

The especially damning nature of a confession requires the State to prove that the statement was voluntary before it is

admissible. *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991). See, also, *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (holding that a conviction based on an involuntary confession violates due process). We have frequently stated the test for the voluntariness of a statement:

> To meet the requirement that a defendant's statement, admission, or confession was made freely and voluntarily, the evidence must show that such statement, admission, or confession was not the product of any promise or inducement—direct, indirect, or implied—no matter how slight. However, this rule is not to be applied on a strict, per se basis. Rather, determinations of voluntariness are based upon an assessment of all of the circumstances and factors surrounding the occurrence when the statement is made. . . .

*State v. Melton*, 239 Neb. 790, 796, 478 N.W.2d 341, 347 (1992). See, also, *Haynie, supra*. We also note that the necessity of proving that Walker's statement was voluntary is not obviated by the fact that Walker went to the police station voluntarily, was not under arrest during interrogation, and knowingly and intelligently waived his *Miranda* rights prior to the pretest interview. See *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990).

We first address Circo's statement that Walker was under "a lot of emotional stress." Whether this was true or not, the statement clearly is neither a promise nor an inducement sufficient to render Walker's confession involuntary. In *State v. Norfolk*, 221 Neb. 810, 381 N.W.2d 120 (1986), we were faced with a similar argument by the defendant. Norfolk had argued that his confession was involuntary because an officer suggested that Norfolk would "feel better" if he confessed. We held that this statement did not constitute an inducement sufficient to overturn the trial court's finding of voluntariness. In doing so, we noted that " '[a]n interrogation tactic in which the police appear to befriend the defendant' does not, by itself, render the confession involuntary." *Id.* at 820, 381 N.W.2d at 128 (quoting *State v. Erks*, 214 Neb. 302, 333 N.W.2d 776 (1983)). Circo's statement regarding Walker's emotional condition was no more an improper inducement than the

statement in *Norfolk*. We therefore hold that this statement did not render Walker's confession involuntary.

The other two statements that Walker asserts were improper differ from the "emotional stress" statement in that they are arguably deceptive. While it is true that police cannot coerce a statement from a defendant or promise leniency in exchange for a statement, *Porter, supra*, mere deception will not render a statement involuntary or unreliable, *State v. Fuller*, 203 Neb. 233, 278 N.W.2d 756 (1979). We must therefore determine whether, if Circo's statements were deceptive, the deception "produce[d] a false or unworthy confession." *Erks*, 214 Neb. at 305, 333 N.W.2d at 779.

The more problematic statement concerns the officer's explanation of "rape" to Walker. During the interview, Walker told Circo that the victim had accused him of sexually assaulting her. Circo then replied that "to rape someone is to forcibly take something from someone without their permission. . . . *To have sex with someone is not rape.* . . . Rape is a forced type thing." (Emphasis supplied.)

Although Circo's statement is an accurate, albeit simplistic, statement of the law, it is deceptive to persons lacking a legal education. The State points out that while Circo implied that having mutually-agreed-upon sex with the victim would not be sexual assault, Circo never stated that it would not be a crime. This argument draws too fine a distinction. To the lay individual unfamiliar with the niceties of the law, Circo's statement indicates that if the sexual contact between Walker and the victim was consensual, then Walker had committed no crime. Under § 28-319(1)(c), however, sexual intercourse between Walker and the victim constituted first degree sexual assault. The statement, as such, is deceptive. However, deception alone will not render the confession involuntary.

In *Norfolk, supra*, we stated, "[T]he test for determining admissibility of a statement obtained by police deception is whether that deception *produced* a false or untrustworthy confession or statement." (Emphasis in original.) *Id*. at 820, 381 N.W.2d at 128. The statement will be involuntary if, considering all the circumstances, the officer's statements overbore the will of the defendant and caused him to confess.

*State v. Ray*, 241 Neb. 551, 489 N.W.2d 558 (1992).

In *Ray*, we stated:

> A defendant's statement is inadmissible only if the totality of the circumstances shows that the police offered the defendant a *benefit in exchange* for the statement. . . .
>
> . . . .
>
> If the *benefit is offered in exchange* for testimony, and the offer is definite, then the confession is involuntary and must be suppressed.

(Emphasis supplied.) *Id*. at 562-64, 489 N.W.2d at 565-66.

From this language it is clear that Walker's statement was not rendered involuntary by Circo's deceptive statement. Unlike the situation in *Ray*, where the officer told the defendant that " 'if he cooperated it would be better for him,' " *id*. at 556, 489 N.W.2d at 564, Circo offered no beneficial exchange for Walker's confession. Granted, Walker would have benefited if Circo's statement had been true, but the existence of that benefit was completely independent of whether Walker confessed; Circo's statement sought nothing in return for the benefit.

Walker's decision to confess "got" him nothing. Even if Circo's statement had been true, Walker need not have made a statement to receive the "benefit" of nonillegality. Walker's statement is analogous to a statement blurted out by an accused before being *Mirandized*—the statement is "volunteered" and therefore admissible. Likewise, Walker's confession was not "produced" by Circo's deceptive characterization of the law and is also admissible. Cf. *Norfolk, supra*.

An additional consideration is a statement Circo made before Walker confessed that substantially reduced the deceptive impact of Circo's "rape" statement. Walker asked Circo how the prosecutor would handle the case, to which Circo responded, "I can't respond to any of that. I'm a polygraph examiner; this is the part I'm involved in." The State correctly points out that if Circo had wanted to deceive Walker with a promise of leniency, he could have told Walker that mutually-agreed-upon sex was not a crime. Circo did not do this and thus mitigated the effects of his deceptive "rape" statement.

Walker's final voluntariness argument concerns Circo's statements about the commonness of child-initiated sexual contact. Walker argues that these statements improperly induced a confession by implying that he had done nothing wrong. We do not agree.

It is debatable whether Circo's statements about child-initiated sex were, in fact, deceptive. Rather, they appear to be another attempt to "befriend" the defendant. Regardless of whether Circo's statements regarding the commonness of this problem were true, the statements certainly had not overborne Walker's will and "produced a false or untrustworthy confession." *Norfolk*, 221 Neb. at 820, 381 N.W.2d at 128.

Like Circo's statements about the nature of sexual assault, the "child-initiated sex" statements simply do not offer any exchange of benefits for Walker's confession. Even if Walker actually believed that his contact with the victim was neither illegal nor out of the ordinary, this belief provides no incentive or pressure to make a statement. In *Norfolk, supra*, we noted that the greatest concern about involuntary confessions is that they are unreliable or untrustworthy. That concern does not present itself in Walker's case. Having no incentive to fabricate a story, having been informed of his rights, and being free to stop the interview at any time, Walker *chose* to make a statement. The district court found this statement to have been made voluntarily.

We will only disturb the trial court's ruling on a motion to suppress if that court's findings of fact are clearly erroneous. In making this determination, we do not reweigh the evidence or resolve conflicts in the evidence, but do recognize the trial court as the finder of fact and that the trial court has observed the witnesses. *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (citing *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991)). "Thus, 'a determination by the trial court that a statement was made voluntarily will not be disturbed on appeal unless clearly wrong.' " *Ray*, 241 Neb. at 557, 489 N.W.2d at 562.

The trial court, after considering Circo's statements and the other evidence, found that Walker's confession was voluntary. The record supports that this finding was not clearly erroneous.

Although we hold that Walker's confession was not rendered involuntary by Circo's deceptive statements, we do not intimate any approval or condonation of these tactics. We simply hold that the conduct did not overbear Walker's will.

Walker's final assignment of error concerns the references at trial to polygraph. Walker argues that polygraph evidence is not relevant and is therefore inadmissible. Walker further argues that the polygraph references are also inadmissible under Neb. Rev. Stat. § 27-403 (Reissue 1989), because references to polygraph when no polygraph examination was actually given, confuse the issues and mislead the jury. Walker concludes that the admission of the evidence required a mistrial.

Walker is correct that the results of polygraph examinations are not admissible. *State v. Houser*, 234 Neb. 310, 450 N.W.2d 697 (1990) (citing *State v. Beach*, 215 Neb. 213, 337 N.W.2d 772 (1983)). However, simply mentioning the word "polygraph" does not constitute prejudicial error. *State v. Vrchota*, 212 Neb. 567, 324 N.W.2d 394 (1982); *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980).

In *Anderson and Hochstein, supra*, we dealt with a similar situation to the case at bar. In that case, one of the State's witnesses mentioned the word "polygraph" while testifying. The defense then moved for mistrial. The trial court overruled the motion and instructed the jury that the case contained no factual matter concerning polygraph testing. On appeal, we affirmed the overruling of the motion for mistrial:

> [I]n the instant case, there was no testimony concerning the results of a polygraph test. The mere mention of the word "polygraph," absent more, does not constitute prejudicial error. Appellants have failed to disclose how or in what manner the use of the word "polygraph" was prejudicial under the circumstances . . . . The assigned error [for refusing to grant a mistrial] must be overruled.

*Id.* at 67, 296 N.W.2d at 450-51.

The same result applies to Walker's case. The only references to polygraph were Circo's statement about his job and the captions of the "Polygraph Rights Advisory Form" and the "Polygraph Interview" sheet. No polygraph test was given, and thus the *results* of a polygraph test were never mentioned. The

trial court determined that the evidence was relevant, and this finding will not be disturbed on appeal absent an abuse of discretion. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991). Walker has shown no such abuse.

The only prejudice that Walker claims is that the jury may have been misled by references to a polygraph test, when no such test was administered. Section 27-403 permits the exclusion of relevant evidence if, among other things, the probative value of the evidence is substantially outweighed by the danger of misleading the jury or confusing the issues. We believe that the jury was fully capable of understanding the difference between a pretest interview and an actual polygraph test. The judge amply guarded against such confusion by having the State inform the jury that no polygraph test was given to Walker. Finally, Walker's contention that the court erred by allowing Circo to discuss his duties as a polygraph examiner is directly contradicted by the record. The State did ask Circo to describe his duties, but the court sustained Walker's objection to the question.

"The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion." *State v. Palser*, 238 Neb. 193, 202, 469 N.W.2d 753, 759 (1991). The district court correctly ruled that Walker had not suffered such prejudice that a fair trial was prevented. We affirm the court's denial of the motion.

The district court was not clearly wrong in finding that Walker's confession was voluntary. Neither did the court abuse its discretion by holding that the references to polygraph did not render the evidence irrelevant, confuse the issues, or mislead the jury. We therefore affirm.

AFFIRMED.