IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. SCHMALE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
WILLIAM D. SCHMALE, APPELLANT.

Filed June 4, 2013.   No. A-12-592.

Appeal from the District Court for Sarpy County: MAX KELCH, Judge. Affirmed.

Christopher Perrone, of Perrone Law, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

William D. Schmale appeals from the order of the district court for Sarpy County convicting him of third degree sexual assault of a child, child abuse, and third degree sexual assault. On appeal, Schmale challenges the receipt of certain evidence, the court's failure to determine the admissibility of prior bad acts evidence before trial, and the court's refusal to grant a mistrial. Schmale also alleges he received ineffective assistance of counsel.

We conclude that the challenged evidence was relevant and therefore properly admitted, because it tended to prove the existence of a fact of consequence. Because Schmale did not object to any testimony on the ground that it was prior bad acts evidence, that issue was not properly preserved for appeal. The trial court did not abuse its discretion in refusing to grant a mistrial, because there was other evidence corroborating the substance of the question to which Schmale objected. Finally, we conclude that Schmale's trial counsel was not ineffective on several of the grounds he claims, but that the record is insufficient to address the remaining claims. Accordingly, we affirm.

- 1 -

## II. BACKGROUND

Schmale was charged with third degree sexual assault of a child, child abuse, and third degree sexual assault. The victim in this case is his daughter, H.S., born in November 1990. H.S. and her mother moved in with Schmale when H.S. was 2 years old. H.S.' mother and Schmale married in 1994, and Schmale adopted H.S. when she was 5 years old.

At trial, H.S. testified that the first time Schmale touched her breasts and vagina, she was 13 years old. Around this same time, Schmale would walk around the house without pants or underwear on and expose himself to H.S. He would also make H.S. sleep in his bed, and on one occasion, he asked her to get under the sheets with him while he was naked and hold him while he slept. H.S. described other similar behavior from Schmale, such as asking her to grab his penis on one occasion, reaching under her shirt and unhooking her bra nearly every day, and sometimes reaching around the front of her shirt and touching her breasts. She testified that beginning when she was in eighth grade, Schmale asked her to tilt her head when she kissed him and would get upset if she just gave him a "quick peck on the mouth," asking her to hold her lips to his for a longer period of time.

H.S. explained that there were times when she was getting ready for school in the morning, and Schmale would come in her room, sit on her bed, and refuse to leave when she needed to change clothes. She would ask him to leave, but he would refuse, so she had to turn her back to him and face her closet to get dressed. Schmale would also ask her what underwear she was wearing before she went to school. When she purchased new bras and underwear, he would ask her to model them for him. Schmale also purchased underwear for H.S., including a pair that said "'who's your daddy'" on the back.

H.S. described a particular incident that occurred when she was a junior in high school. Schmale had been wrestling with her, which she explained meant that Schmale would touch her inner thighs toward her vagina, touch her breasts, put his hands in her underwear, and sometimes pull her pants down. In order to get away from him, she told him she was going to take a shower. As she was getting ready to take a shower, she heard the telephone ring, and when she walked back out to answer the telephone, she saw that Schmale had ejaculated while sitting on the couch and had semen on his stomach.

H.S. testified that she did not tell anyone about the abuse from Schmale because she was embarrassed and did not know who to tell or whether anyone would believe her. When she was in high school, she eventually told a friend and a teacher.

H.S.' friend testified at trial that H.S. told her about the abuse. She also described a time she was at H.S.' house and saw Schmale rubbing his hand on H.S.' upper thigh and rubbing her back under her shirt. H.S.' teacher also testified at trial. She stated that H.S. told her that Schmale expected her to do all the things that a wife was supposed to do and that it was disgusting to H.S. Around the time H.S. made this statement, H.S.' teacher noticed changes in H.S.' behavior and testified that H.S. seemed very depressed, very withdrawn, and very emotional. H.S.' teacher testified that H.S. would cry almost every day.

H.S. eventually graduated from high school and moved out of the house to attend college. In September 2009, H.S. went to see a therapist, Christine Wiley, after she witnessed her roommate being sexually assaulted. She disclosed the abuse from Schmale to Wiley. Wiley

testified at trial that she saw H.S. for 10 sessions between September and November 2009. Wiley is a licensed mental health practitioner and has worked with approximately 100 victims of sexual abuse or sexual assault. She testified that out of those 100 victims, the majority did not report the abuse or assault right away.

Wiley reported Schmale's abuse of H.S. to police. An investigator with the Sarpy County sheriff's office contacted H.S. after receiving the report of the abuse. During the course of his investigation, the investigator asked H.S. if she would be willing to make a telephone call to Schmale and record it. H.S. agreed and recorded telephone conversations she had with Schmale on October 19 and 23, 2009. During the conversations, Schmale denied doing anything wrong or purposely doing anything to H.S. and blamed H.S.' allegations on the fact they were playing around. But he apologized to H.S. for hurting her.

H.S.' mother testified at trial that during the time period at issue in this case, 2003 through 2009, she was suffering from depression, posttraumatic stress disorder, anxiety, panic disorder, and bipolar disorder. As a result of the medications she was taking, she slept a lot and was bedridden for much of the time. She testified that she did not remember H.S.' telling her that Schmale had molested her, but that as soon as she found out about the abuse in October 2009, she moved out of the house. H.S.' mother also described a conversation she had with Schmale in July 2010, in which he told her that he wished H.S. would drop the case and that if he went to jail, he knew people who would "take care of" H.S. H.S.' mother interpreted these statements as a threat to harm H.S.

Schmale testified in his own behalf. He denied ever sexually molesting H.S. and said that he would never do anything to hurt her. He explained that he sustained a work-related injury to his neck and shoulder in 1992 and has been unable to work since then. He testified that he cannot feel with his hands very well since the injury and may have accidentally touched H.S.' breast with his hand because he could not feel what he was touching. He admitted that he asked H.S. to model underwear for him and that she did so at his direction. He also admitted that he bought her underwear that said "'who's your daddy'" on the back.

Ultimately, the jury found Schmale guilty of all three crimes. Schmale timely appeals.

## III. ASSIGNMENTS OF ERROR

Schmale alleges the district court (1) abused its discretion by admitting irrelevant, prejudicial, impermissible character, and prior bad acts evidence; (2) committed plain error by failing to require the State to prove prior bad acts evidence as admissible prior to introduction to the jury; and (3) abused its discretion by failing to grant a mistrial after prosecutorial misconduct. Schmale also alleges he received ineffective assistance of counsel.

## IV. ANALYSIS

### 1. INADMISSIBLE EVIDENCE

Schmale argues the district court erred in admitting irrelevant, prejudicial, impermissible character, and prior bad acts evidence. At trial, Schmale did not object to the evidence he now challenges on the grounds of impermissible character or prior bad acts evidence. He only objected on the basis that it was irrelevant or unduly prejudicial under Neb. Rev. Stat. § 27-403 (Reissue 2008). On appeal, the defendant may not assert a different ground for his or her

objection to the admission of evidence than was offered to the trier of fact. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *Id*. Thus, we will review the evidence to determine whether it was properly admitted only on the basis of relevance and prejudice.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Freemont*, 284 Neb. 72, 815 N.W.2d 872 (2012). The exercise of judicial discretion is implicit in determinations of relevancy and prejudice, and a trial court's decision regarding them will not be reversed absent an abuse of discretion. *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009).

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. McPherson*, 266 Neb. 734, 668 N.W.2d 504 (2003). An analysis under § 27-403 requires a court to weigh the probative value of particular evidence against the danger of unfair prejudice. *State v. Epp, supra*. Schmale challenges several categories of evidence.

(a) Schmale's actions

Schmale argues the district court abused its discretion by allowing witnesses to testify that he walked around the house nude in front of H.S. and exposed himself to her, he watched H.S. dress, he asked H.S. to model underwear for him, and he rubbed and scratched H.S.' back and leg. He claims this evidence was irrelevant and prejudicial. We disagree.

Schmale was charged with third degree sexual assault of a child, child abuse, and third degree sexual assault. A person commits third degree sexual assault of a child when he is at least 19 years old and subjects another person 14 years old or younger to sexual contact and does not cause serious personal injury to the victim. Neb. Rev. Stat. § 28-320.01 (Reissue 2008). A person commits child abuse if he knowingly, intentionally, or negligently places a child in a situation to be sexually abused as defined in § 28-320.01. Neb. Rev. Stat. § 28-707 (Reissue 2008). A person commits third degree sexual assault if he subjects another person to sexual contact without the consent of the victim and does not cause serious personal injury to the victim. Neb. Rev. Stat. § 28-320 (Reissue 2008).

Each of these crimes requires the State to prove that Schmale subjected H.S. to sexual contact or placed her in a situation to be subjected to sexual contact. Sexual contact includes "only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party." Neb. Rev. Stat. § 28-318 (Cum. Supp. 2012).

At two points during the trial, after Schmale voiced relevancy and § 27-403 objections to the testimony of his actions described above, the district court overruled the objections and stated that such evidence was admissible because the State has the burden of proving sexual contact. Based on the district court's reasoning, we conclude it was not an abuse of discretion to allow the evidence of Schmale's actions which he now challenges. This evidence tends to make the existence of the fact that Schmale's actions were for the purpose of sexual arousal or gratification and the fact that he placed H.S. in a situation to be sexually abused more probable.

- 4 -

While the evidence may have been prejudicial against Schmale, it was not unfairly prejudicial as to render it inadmissible under § 27-403. This argument is without merit.

(b) Testimony of H.S.' Therapist

Testimony of H.S.' therapist, Wiley, contained two parts: She testified about her general experiences as a mental health practitioner and about her interactions with H.S. Schmale objected to her testimony on the basis of relevance.

In *State v. Bruna*, 12 Neb. App. 798, 686 N.W.2d 590 (2004), we found that a psychologist's testimony regarding the behavior of child sexual abuse victims was relevant and admissible because it assisted the jury in understanding the nature of a sexually abusive relationship, a topic with which most laypeople are unfamiliar. Similarly here, allowing Wiley's testimony regarding her professional experiences was not an abuse of discretion because her testimony tended to explain for the jury that it is not uncommon for victims to delay reporting incidents of sexual abuse.

The district court sustained many of Schmale's relevance objections during Wiley's testimony about her interactions with H.S. Thus, Wiley was essentially only able to testify that she met with H.S. 10 times from September to November of 2009, that H.S. initially came to see her because she witnessed a traumatic event which then prompted her to disclose a traumatic event in her own life, and that she formed a diagnosis of H.S. We conclude that Wiley's testimony regarding H.S. was relevant because the fact that H.S. saw a mental health practitioner after recalling a traumatic event in her own life tends to establish that the traumatic event was the abuse from Schmale. Accordingly, the district court did not abuse its discretion in allowing in this evidence.

On appeal, Schmale also challenges Wiley's testimony about posttraumatic stress disorder. However, he failed to object to this line of questioning at trial. At the conclusion of Wiley's testimony, Schmale moved to strike her entire testimony on the ground that it was irrelevant. It was not an abuse of discretion for the court to overrule that motion because the entirety of Wiley's testimony was not irrelevant. Thus, we decline to address specifically the portions of Wiley's testimony regarding posttraumatic stress disorder, because it was not properly preserved for appeal.

(c) Threats Toward H.S.

H.S.' mother and Schmale testified that Schmale told her that he wished H.S. would drop the case and that if he went to jail, he knew people who would "take care of" H.S. H.S.' mother interpreted these statements as a threat to harm H.S. The trial court overruled Schmale's relevancy objections. "Evidence of a defendant's attempted intimidation or intimidation of a State's witness is relevant evidence of the defendant's 'conscious guilt' that a crime has been committed." *State v. Thorpe*, 280 Neb. 11, 24, 783 N.W.2d 749, 761 (2010). Therefore, the district court did not abuse its discretion in allowing in this testimony.

Because we conclude that the evidence that Schmale now challenges was relevant and not unfairly prejudicial, this assignment of error is without merit.

- 5 -

## 2. PRIOR BAD ACTS EVIDENCE

Schmale argues that the district court committed plain error by failing to require the State to prove the admissibility of prior bad acts evidence prior to trial. Plain error applies when an appellate court discovers error on the record; it is not a broad assertion to be assigned by the parties on appeal. *State v. Bruna*, 12 Neb. App. 798, 686 N.W.2d 590 (2004). Schmale does not specifically identify which prior bad acts evidence he is referring to, and because Schmale failed to object to evidence on the ground of prior bad acts at trial, we find no plain error on the record.

## 3. FAILURE TO GRANT MISTRIAL

Schmale argues the district court erred in overruling his request for a mistrial. The decision whether to grant a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. McBride*, 19 Neb. App. 277, 804 N.W.2d 813 (2011). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id*.

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). Events that may require the granting of a mistrial include egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters. *Id*. And before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *Id*.

During direct examination of H.S.' mother, the State asked her whether she remembered Schmale having H.S. model underwear for him, to which she responded, "No." The State then asked whether she recalled a conversation she had with the prosecutor the week prior where he had asked her that same question and she had answered affirmatively. Schmale objected and asked for a mistrial. The court overruled the request for a mistrial but sustained the objection and asked the State to "not do that again."

The substance of the State's initial question was regarding Schmale's asking H.S. to model underwear for him. H.S. testified that he had asked her to model underwear for him. Schmale also admitted that he had asked H.S. to model underwear for him and that she had done so at his direction a "couple of times." Because there was other evidence corroborating the substance of the question at issue, Schmale has not demonstrated that this statement actually prejudiced him. We find no abuse of discretion and no merit to this assignment of error.

## 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Schmale argues his trial counsel was ineffective for (1) failing to investigate several people and issues, (2) failing to request a suppression hearing with respect to the recorded telephone calls, (3) failing to sequester the witnesses prior to opening statements, (4) failing to object to comments made during opening statements, (5) failing to object to irrelevant or prejudicial testimony, and (6) failing to object to comments made during closing arguments.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his

or her defense. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). Although Nebraska law requires that issues of ineffective assistance of counsel be raised on direct appeal or be waived, the fact that they are raised does not necessarily mean they can be resolved. *Id*. In most instances, they cannot, because the trial record reviewed on appeal is "'devoted to issues of guilt or innocence'" and usually "'will not disclose the facts necessary to decide either prong of the . . . analysis.'" *Id*. at 607, 780 N.W.2d at 34. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

### (a) Failure to Investigate

Schmale claims that his trial counsel was ineffective in failing to investigate the following people and issues:

### *(i) H.S.' Teacher*

Schmale argues his trial counsel should have deposed H.S.' teacher prior to trial and should have been prepared to question her as to whether teachers have mandatory reporting requirements when students make allegations of sexual abuse and why she did not report H.S. if she believed she was a victim of sexual abuse.

### *(ii) H.S.' Psychologist*

Schmale alleges trial counsel should have investigated a psychologist who treated H.S. and should have properly cross-examined H.S. and other witnesses as to their interactions with the psychologist.

### *(iii) Investigator*

Schmale claims his trial counsel failed to investigate or depose prior to trial the investigator with the sheriff's office and failed to properly cross-examine him at trial regarding the recorded telephone conversations.

### *(iv) H.S.' Therapist*

Schmale alleges his trial counsel was ineffective for failing to investigate or depose H.S.' therapist, Wiley, prior to trial; failing to request a "*Daubert* hearing" with respect to her testimony, brief for appellant at 27; and choosing not to cross-examine her at trial.

### *(v) Use of Medical Expert Testimony*

Schmale claims his trial counsel should have introduced medical evidence or expert witness testimony supporting his argument that he is unable to feel with his hands as a result of the work-related injury he sustained.

An evaluation of trial counsel's actions would require an evaluation of trial strategy and of matters not contained in the record. Schmale acknowledges that the record is insufficient to address the above claims, and we conclude that the record on direct appeal is, in fact, not sufficient to adequately review this claim.

### (b) Suppression Hearing

Schmale argues that his trial counsel was ineffective in failing to file a motion to suppress the recorded telephone calls and request a *Jackson v. Denno* hearing and a suppression hearing. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). He claims that the recordings would have likely been suppressed because he was not advised of his *Miranda* rights and that the statements he made during the recorded conversations were not made freely and voluntarily.

*Jackson v. Denne, supra*, requires the trial court to make an independent determination that a confession is voluntary before receiving it into evidence. Coercive police activity is a necessary predicate to the finding that a confession is not voluntary. *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *State v. Landis*, 281 Neb. 139, 794 N.W.2d 151 (2011). The safeguards provided by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), are required "only when there has been such a restriction on one's freedom as to render one 'in custody'" and the person in custody is subjected to either express questioning or its functional equivalent. *State v. Landis*, 281 Neb. at 147, 794 N.W.2d at 157. A person is in custody for purposes of *Miranda* when there is a formal arrest or a restraint on one's freedom of movement to the degree associated with such an arrest. *Id*.

Schmale was not in custody when the recorded telephone conversations occurred, and thus, no *Miranda* warnings were necessary. Additionally, there is no evidence of coercive police activity that would render the statements he made inadmissible based on a finding that they were not made freely and voluntarily. Therefore, even if Schmale's trial counsel had moved to suppress the evidence, such effort would have been unsuccessful. Counsel cannot be ineffective for failing to make a motion or an objection that has no merit. See *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002). Accordingly, we conclude that Schmale did not receive ineffective assistance of counsel on this basis.

### (c) Sequester Witnesses

Schmale asserts that his trial counsel was ineffective in failing to request that witnesses be sequestered prior to opening statements. The purpose of sequestering witnesses is so they cannot hear the testimony of other witnesses. See Neb. Rev. Stat. § 27-615 (Reissue 2008). In this case, the witnesses heard only opening statements, not the testimony of any other witnesses. Schmale has not shown, nor can we discern, how he was harmed by this. He claims that because each of the State's witnesses heard the opening statements, he or she "could craft their own testimony to fit the objective of convicting Schmale." Brief for appellant at 29. However, each witness took an oath to tell the truth, and Schmale failed to explain how each witness changed his or her testimony after hearing opening statements. We therefore conclude the failure to request sequestration of the witnesses prior to opening statements was not ineffective assistance of counsel.

### (d) Opening Statements

Schmale alleges his trial counsel was ineffective in failing to object to comments made by the State during opening statements. He identifies the State's reference to Schmale buying underwear for H.S. and asking her to model them as well as the reference to H.S.' friend, who

would testify to Schmale's "'troubling behavior'" of rubbing H.S.' back and legs. Brief for appellant at 30. Because we have determined that this testimony was relevant and properly admitted into evidence, Schmale's counsel was not ineffective for failing to object to references to this evidence during opening statements.

As to the remaining comments Schmale identifies, we cannot speculate as to why trial counsel did not object, and thus, the record is not sufficient to review the claim with respect to those comments.

### (e) Objecting to Testimony

Schmale claims his trial counsel was ineffective for failing to object to several instances of testimony. The record is not sufficient to address these claims, because it does not disclose counsel's reasons for failing to object to the admission of certain evidence.

### (f) Closing Arguments

Schmale argues his trial counsel was ineffective for failing to object to irrelevant comments during closing arguments. The comments that Schmale now challenges include references to Schmale's asking H.S. to model underwear and purchasing underwear for her, Schmale's rubbing H.S.' thigh and back in front of H.S.' friend, and Schmale's comments to H.S.' mother, which she interpreted as threats against H.S.

Generally, as stated above, the record on direct appeal is insufficient to disclose why trial counsel failed to object to certain evidence. However, we have previously determined that the evidence to which the State referred in its closing argument was properly admitted during trial. Schmale identifies an additional comment made by the State during closing arguments that we have not yet addressed. The State referred to testimony from H.S. about seeing Schmale after ejaculation with semen on his stomach. We conclude that this evidence was relevant and admissible for the same reasons as testimony of Schmale's actions we addressed above. Therefore, trial counsel was not ineffective for failing to object to the State's references to relevant and properly admitted evidence.

### V. CONCLUSION

We conclude that the district court did not abuse its discretion in admitting the challenged evidence because it was relevant and not unfairly prejudicial. Schmale failed to preserve the issue of prior bad acts evidence because he did not object to it on those grounds at trial. It was not an abuse of discretion for the district court to deny Schmale's request for a mistrial. Finally, we find no ineffective assistance of counsel regarding several of Schmale's claims, but determine the record is insufficient to address his remaining claims.

AFFIRMED.